1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA ANN DUBOIS,

        Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

No.  2:13-cv-00827 CKD

ORDER

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

        Plaintiff, born September 20, 1961, applied for SSI benefits on May 13, 2008, alleging disability beginning January 31, 2007.  Administrative Transcript ("AT") 187.  Plaintiff alleged she was unable to work due to depression, problems with her back and left leg, issues due to her gastric bypass surgery, osteoporosis, and carpal tunnel resulting in numbness, tingling, and loss of strength in her hands.  AT 192.  In a decision dated December 16, 2011, the ALJ determined that
/////

1

plaintiff was not disabled.[1] AT 13-21. The ALJ made the following findings (citations to 20

C.F.R. omitted):

> 1.   The claimant has not engaged in substantial gainful activity since May 13, 2008, the application date.
>
> 2.   The claimant has the following medically severe combination of impairments: degenerative disc disease of the lumbar spine with radiculopathy or neuropathy in the left leg, history of gall bladder surgery, osteoporosis, gastroesophageal reflux disease, tendinitis, anemia, depressive disorder recurring and severe with psychotic features, borderline personality disorder, post-traumatic stress disorder, and peripheral neuropathy.

/////

---

[1]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 416.967(b).  The claimant is limited to occasional forceful pushing and pulling with her bilateral upper extremities, occasional climbing, balancing, stooping, crouching, crawling and kneeling. The claimant is limited to occasional interaction with the general public and limited to frequent interaction with coworkers and supervisors.

5.     The claimant is unable to perform any past relevant work.

6.     The claimant was born on September 20, 1961 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.     The claimant has at least a high school education and is able to communicate in English.

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.    The claimant has not been under a disability, as defined in the Social Security Act, since May 13, 2008, the date the application was filed.

AT 15-21.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly assessed the opinions of Drs. Patrick Wong and L.O. Mallare; (2) the ALJ improperly failed to rely upon vocational expert testimony tendered in response to a complete hypothetical question; (3) the ALJ improperly discredited plaintiff's testimony; and (4) the ALJ improperly discredited lay evidence of record.  ECF No. 15-1, 4.

/////

/////

3

1    LEGAL STANDARDS

2        The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13       The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

14   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

16   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

17   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

18   administrative findings, or if there is conflicting evidence supporting a finding of either disability

19   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

20   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22   ANALYSIS

23   A.  Medical Opinions

24       Plaintiff contends that the ALJ committed error in failing to provide clear and convincing

25   or specific and legitimate reasons for rejecting the opinions of Drs. Wong and Mallare.  ECF No.

26   15-1, 18-23.  Plaintiff's contention is based on the ALJ's RFC finding and his statement that he

27   assigned "appropriate weight to these opinions as they both show that the claimant is able to

28   perform at least unskilled work involving simple repetitive tasks."  Id.; AT 19.

4

1    The Social Security regulations provide in pertinent part that "[m]edical opinions are

2  statements from physicians and psychologists . . . that reflect judgments about the nature and

3  severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

4  still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §

5  416.927(a)(2). The weight given to medical opinions depends in part on whether they are

6  proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821,

7  830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional,

8  who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v.

9  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

10    To evaluate whether an ALJ properly rejected a medical opinion, in addition to

11  considering its source, the court considers whether (1) contradictory opinions are in the record,

12  and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

13  treating or examining medical professional only for "clear and convincing" reasons. Lester, 81

14  F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be

15  rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at

16  830. While a treating professional's opinion generally is accorded superior weight, if it is

17  contradicted by a supported examining professional's opinion (e.g., supported by different

18  independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d

19  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In

20  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

21  findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

22  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a

23  non-examining professional, without other evidence, is insufficient to reject the opinion of a

24  treating or examining professional. Lester, 81 F.3d at 831.

25    1. Dr. Wong's Opinion

26    Consultative examiner Dr. Wong performed an examination of plaintiff that is reflected in

27  his July 13, 2009 opinion. AT 415-419. In his opinion, Dr. Wong noted that plaintiff's chief

28  complaint was stress, but that she offered a convoluted history wherein she describes a pattern of

5

stress and depression since the early 90s.  AT 415.  He also noted that her history of treatment was equally convoluted.  Id.  Dr. Wong later indicated that her convoluted and confusing history is also displayed in a San Joaquin Mental Health Services assessment performed by Judith Dolynick on April 21, 2001.  AT 416.  Dr. Wong stated that plaintiff did not reveal a pattern of substance abuse to him and that she denied any such pattern.  Id.  However, he found it interesting to note that when asked about having substance abuse issues she hesitated before answering no and that she has a history of having attended DUI classes.  Id.  He noted that plaintiff is currently not on any psychiatric medicines, but that she was taking "Norco, Xanax, cyclobenzaprine, some sort of quinine," gabapentin, B12 injections, and multivitamins.  Id.

Dr. Wong found that plaintiff: is easily engaged and exhibits good social reciprocity; exhibits no psychomotor hyperactivity or retardation; has an affect in full range and is well modulated; has a depressed mood; has a linear and well organized thought form without psychotic patterns; has the capacity for good insight and judgment based on well thought through [sic] responses; is attentive and has satisfactory, sustained mental pace; has her concentration intact; and, has her remote memory intact.  AT 417.  Dr. Wong indicated that plaintiff had "[m]ajor depression, recurrent, moderate" in the diagnosis section of his opinion and later reiterated that he would not classify it as severe.  AT 417-418.  He stated that she appears to be cognitively intact and is probably capable of carrying out simple and complex instructions with minimal limitation.  AT 418.  He noted that plaintiff's "ability to relate to coworkers in the public . . . is probably moderately diminished in severity due to the combination of her depression and personality factors.  Id.  He stated that, at the time of his examination, there was "probably a[n elevated] functional deterioration due to typical workplace stressors."  Id.  He also noted that her ability "to maintain an adequate pace and level of endurance over an 8-hour workday is likely to be good on some days and impaired on other days, probably moderately severely impaired several days out of the month and mildly-to-moderately impaired perhaps a third of the time."  Id.  Dr. Wong stated that plaintiff's "ability to adapt to changes in workplace is mildly-to-moderately diminished" and that she "is capable of staying consistently aware of safety issues in workplace (sic)."  Id.

1       2. <u>Dr. Mallare's Opinion</u>

2       State agency medical consultant Dr. Mallare conducted a psychiatric review of plaintiff

3   that is reflected in his August 3, 2009 opinion.  AT 420-434.  Dr. Mallare's opinion, contained in

4   a check-box form, is based on affective, personality, and substance addiction disorders.  AT 420.

5   Dr. Mallare noted that plaintiff had medically determinable impairments of, "MDD," or major

6   depressive disorder, borderline personality disorder, and risk of alcohol abuse.  AT 423, 425-426.

7   In rating plaintiff's functional limitations, Dr. Mallare indicated that plaintiff had mild limitations

8   in activities of daily living and moderate limitations in difficulties maintaining social functioning

9   and concentration, persistence, or pace.  AT 428.  Dr. Mallare also completed a mental residual

10  functional capacity assessment in which he indicated that plaintiff is not significantly limited in

11  her abilities to: remember locations and work-like procedures; understand and remember very

12  short and simple instructions; carry out very short and simple instructions; perform activities

13  within a schedule, maintain regular attendance, and be punctual within customary tolerances;

14  sustain ordinary routine without special supervision; make simple work-related decisions;

15  complete a normal workday and workweek without interruptions from psychologically based

16  symptoms and to perform a consistent pace without an unreasonable number and length of rest

17  periods; ask simple questions or request assistance; accept instructions and respond appropriately

18  to criticism from supervisors; get along with coworkers or peers without distracting them or

19  exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic

20  standards of neatness and cleanliness; respond appropriately to changes in the work setting; be

21  aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use

22  public transportation; and, set realistic goals or make plans independently of others.  AT 432-433.

23  However, Dr. Mallare also indicated that plaintiff was moderately limited in her ability to:

24  understand and remember detailed instructions; carry out detailed instructions; maintain attention

25  and concentration for extended periods; work in coordination with or proximity to others without

26  being distracted by them; and, interact appropriately with the general public.  <u>Id.</u>  Dr. Mallare did

27  not indicate that plaintiff was markedly limited in any area of understanding and memory,

28  sustained concentration and persistence, social interaction, or adaptation.  <u>Id.</u>  In conclusion, he

7

1  noted that plaintiff had "[a]dequate capacity to sustain cpp (concentration, persistence, pace) for

2  simple 1-2 step tasks w/ occasional peer, supervisor and public contact."  AT 434.

3       3.  ALJ's Opinion and RFC Finding

4       Plaintiff recognizes that the ALJ set out the opinions of Drs. Wong and Mallare in his

5  decision and assigned them "appropriate weight."  ECF No. 15-1, 20.  However, plaintiff claims

6  that although the ALJ purported to assign "appropriate weight" to these opinions, his RFC finding

7  indicates that he rejected them.  Id.  As discussed above, the ALJ ultimately found that plaintiff

8  had the RFC to perform a wide range of light work but had the following limitations: occasional

9  forceful pushing and pulling with her bilateral upper extremities; occasional climbing, balancing,

10  stooping, crouching, crawling and kneeling; occasional interaction with the general public; and,

11  frequent interaction with coworkers and supervisors.  AT 16.  Plaintiff specifically takes issue

12  with the ALJ's finding that she is only limited to occasional interaction with the general public

13  and frequent interaction with coworkers and supervisors, arguing that these limitations are less

14  restrictive than those assessed by Drs. Wong and Mallare.  Id.  Defendant argues that the ALJ

15  properly translated the opinions into an RFC finding and placed them within their proper context

16  in the overall longitudinal medical evidence.  ECF No. 20, 7.

17       Plaintiff's argument fails for several reasons.  First, the ALJ's finding that plaintiff is

18  limited to occasional interaction with the general public and that plaintiff can sustain frequent

19  interaction with coworkers and supervisors is supported by aspects of the opinions at issue.  Dr.

20  Wong found that plaintiff: is easily engaged and exhibits good social reciprocity; has an affect in

21  full range and is well modulated; has a linear and well organized thought form; has the capacity

22  for good insight and judgment; is attentive and has satisfactory, sustained mental pace; and, has

23  her concentration and remote memory intact.  AT 417-418.  He also stated that plaintiff was

24  cognitively intact, probably capable of carrying out simple and complex instructions with

25  minimal limitation, and that her ability to adapt to changes in workplace is only mildly-to-

26  moderately diminished.  AT 418.  Dr. Mallare found that plaintiff is not significantly limited in

27  her abilities to: remember work-like procedures; understand and remember very short and simple

28  instructions; carry out very short and simple instructions; ask simple questions or request

1   assistance; accept instructions and respond appropriately to criticism from supervisors; get along

2   with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain

3   socially appropriate behavior; and, respond appropriately to changes in the work setting.  AT 432-

4   433.  These aspects of the opinions tend to support the ALJ's finding that plaintiff can

5   occasionally interact with the general public and sustain frequent interaction with coworkers and

6   supervisors.

7            Second, aspects of the opinions of Drs. Wong and Mallare are inconsistent with each

8   other.  Where an opinion is contradicted by a supported examining professional's opinion, the

9   ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d at 1041.  While Dr. Wong noted that

10   plaintiff's ability to maintain an adequate pace and level of endurance would probably be

11   moderately severely impaired several days out of the month, Dr. Mallare found that plaintiff was

12   not significantly limited in her ability to complete a normal workday and workweek without

13   interruptions from psychologically based symptoms and to perform a consistent pace without an

14   unreasonable number and length of rest periods.  Also, although Dr. Wong stated that plaintiff's

15   ability to adapt to changes in workplace is mildly-to-moderately diminished, Dr. Mallare found

16   that plaintiff was not significantly limited in her ability to respond appropriately to changes in the

17   work setting.  These inconsistencies were properly resolved by the ALJ in making his RFC

18   determination.

19            Thirdly, subsequent treatment records provide additional information that is inconsistent

20   with the findings of Drs. Wong and Mallare.  As previously stated, a contradicted opinion of a

21   treating or examining professional may be rejected for "specific and legitimate" reasons that are

22   supported by substantial evidence.  Lester, 81 F.3d at 830.  After discussing the opinions of Drs.

23   Wong and Mallare, the ALJ stated that "records from San Joaquin County Behavioral Health

24   show that depression was in remission as of April 19, 2011 and there are no medical records

25   showing recurrent depressive symptoms that suggest [plaintiff] is unable to perform basic work

26   activities as alleged."  AT 19, 460.  Defendant notes that the opinions of Drs. Wong and Mallare

27   took place in 2009, when plaintiff began her mental health treatment.  ECF No. 20, 8.  Defendant

28   /////

1  also notes that the longitudinal records at San Joaquin showed that over time plaintiff's mental

2  status improved, her panic attacks reduced, and she had a good response to medications.  Id.

3      The ALJ's statement that "there are no medical records showing recurrent depressive

4  symptoms that suggest [plaintiff] is unable to perform basic work activities" and defendant's

5  argument that the record indicates plaintiff's mental status improved are well supported by

6  substantial evidence in the record.  On July 31, 2009, plaintiff stated that she was taking an

7  antidepressant, which provided her with a clearer mind and more motivation.  AT 488.  On

8  September 12, 2009, it was noted that plaintiff was doing well since medications were added to

9  her treatment regime.  AT 486.  In September 26, 2009, it was noted that plaintiff was benefiting

10  from group therapy.  AT 484.  On October 13, 2009, plaintiff reported that medications were

11  partially effective.  AT 479.  On November 11, 2009, plaintiff reported that she was doing better

12  since her medications increased.  AT 478.  On June 1, 2010, plaintiff reported that she was feeling

13  better and that her medication helped with her panic attacks.  AT 470.  On November 19, 2010,

14  plaintiff reported that she is doing better.  AT 466.  On February 18, 2011, it was noted that

15  plaintiff had not made an appointment with a therapist for several months.  AT 464.  On February

16  22, 2011, plaintiff reported that she was doing well with her depressive symptoms and had not

17  seen a therapist for a long time.  AT 463.  Also, as discussed by the ALJ, on April 19, 2011,

18  plaintiff stated that her health had improved and denied feeling depressed.  AT 460.  These

19  records provide substantial support for the ALJ's RFC limitations that are less restrictive than

20  those of Drs. Wong and Mallare.  For instance, Dr. Wong noted that plaintiff was not taking any

21  psychiatric medicines at the time of his examination, see AT 416, but these records indicate that

22  after she began taking such medication her symptoms improved.  These records also support the

23  ALJ's finding that plaintiff is able to perform basic work activities.

24      Lastly, the purpose of the RFC determination is not to encompass each limitation within a

25  given medical record.  Social Security Ruling ("SSR") 96-8p sets forth the policy interpretation of

26  the Commissioner for assessing RFC.  SSR 96-8p.  RFC is what a person "can still do despite [the

27  individual's] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

28  Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental

capabilities").  An individual's RFC is "based on all the relevant evidence in [the individual's] case record."  Id.  As previously noted, the ALJ properly resolved inconsistencies in the record and based his decision on all of the relevant evidence in the record, including treatment records from examinations occurring after Drs. Wong and Mallare examined plaintiff.  He assessed those records, including the limitations within them, and properly translated them into a statement of capabilities—what plaintiff could do despite her limitations.

Thus, plaintiff's argument that the ALJ failed to articulate specific and legitimate reasons for rejecting aspects of Dr. Wong and Dr. Mallare's opinions is without merit.  Also, to the extent that plaintiff asserts that the ALJ erred in making his RFC determination due to the weight he assigned those opinions, that argument is without merit as well.[2]

B.  Vocational Expert Testimony

Plaintiff contends the ALJ failed to include all of plaintiff's limitations in the hypotheticals relied on by the ALJ in finding there were a significant number of jobs which plaintiff can perform.  Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

---

[2]  In concluding her argument regarding the ALJ's assessment of the medical opinions, plaintiff briefly argues that the ALJ should have considered the possibility of a closed period of disability.  ECF No. 15-1, 23.  She notes that the record indicates she was diagnosed with depression around March 2008 and was diagnosed with borderline personality traits in July 2009.  Id.  She then asserts that even assuming her depression was in remission as of April 2011, the 12-month requirement for a closed period of disability is adequately satisfied and should have been considered.  Id.  Defendant failed to address this assertion and plaintiff did not elaborate upon her request in her reply brief.  ECF Nos. 20 and 21.  Reviewing the record as a whole, the court concludes there was no error in the ALJ's failure to consider a closed period.

1    Plaintiff asserts that the ALJ improperly rejected the testimony of the vocational expert

2 that there would be no jobs available to plaintiff in response to a hypothetical posed by plaintiff's

3 counsel which incorporated a limitation to light work, a moderate limitation in relating to

4 coworkers and the public, a moderate limitation in maintaining an adequate pace and level of

5 endurance, and an elevation of impairment beyond moderate by the presence of work stressors,

6 assuming that means that the behavior was inappropriate or that she could not attend to tasks.  AT

7 61-62.  Plaintiff also asserts that the ALJ improperly rejected the testimony of the vocational

8 expert that there would be no jobs available to plaintiff in response to a hypothetical posed by

9 plaintiff's counsel which incorporated a limitation to light work and a moderate to severe

10 impairment in pace and endurance for several days out of the month and then a mild to moderate

11 impairment perhaps a third of the month.  AT 62-63.  As discussed above, the ALJ formulated

12 plaintiff's RFC based on the opinions of Drs. Wong and Mallare, along with the remainder of

13 plaintiff's medical record, and that finding is based on substantial evidence in the record as a

14 whole.  The ALJ found plaintiff could perform a wide range of light work but had the following

15 limitations: occasional forceful pushing and pulling with her bilateral upper extremities;

16 occasional climbing, balancing, stooping, crouching, crawling and kneeling; occasional

17 interaction with the general public; and, frequent interaction with coworkers and supervisors.  AT

18 16.  This finding is in conflict with the hypothetical relied on by plaintiff.  The ALJ also did not

19 find a moderate to severe impairment in pace and endurance for several days out of the month and

20 then a mild to moderate impairment perhaps a third of the month, and such a limitation is

21 inconsistent with the findings of Dr. Mallare and the San Joaquin Behavioral Health records

22 indicating that plaintiff's depression was in remission following the examinations of Drs. Wong

23 and Mallare.  AT 432-433, 460, 463-464, 466, 470, 478-479, 484, 486, 488.  The hypotheticals

24 relied on by the ALJ incorporated limitations that represent a proper assessment of plaintiff's

25 medical record.  The ALJ was not required to accept the vocational expert's responses to

26 hypotheticals with more restrictive limitations.

27 /////

28 /////

1    C. Plaintiff Credibility

2         Plaintiff asserts that the ALJ erred in the evaluation of her credibility.  ECF No. 15-1, 25-

3    28.  The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting

4    effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual

5    functional capacity assessment."  AT 17.  Plaintiff contends that the ALJ failed to provide clear

6    and convincing reasons for discounting plaintiff's credibility as to the severity of her impairment

7    ECF No. 15-1, 28.

8         The ALJ determines whether a disability applicant is credible, and the court defers to the

9    ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

10   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

11   explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

12   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

13   supported by "a specific, cogent reason for the disbelief").

14        In evaluating whether subjective complaints are credible, the ALJ should first consider

15   objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

16   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

17   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

18   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

19   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

20   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

21   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

22   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

23   01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

24   effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

25   Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

26   treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

27   in determining whether the alleged associated pain is not a significant nonexertional impairment.

28   See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

1    on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

2    1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

3    (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

4    Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

5    Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

6        In finding plaintiff not fully credible, the ALJ noted that plaintiff testified that she: has

7    difficulty using her wrists due to carpal tunnel surgery and a wrist fracture in 2007; experiences

8    numbness in her hands and is unable to do tasks requiring fine fingering; alleges a loss of

9    concentration, memory, and focus; alleges occasional anxiety panic attacks; has problems with

10   iron intake and anemia due to gastric bypass surgery; alleges incontinence two to four times a

11   month; alleges difficulty with weakness in her left leg, occasionally in both legs; and that she was

12   wearing a cast on her right arm at the hearing due to a fractured radius bone.  AT 17.  The ALJ

13   also stated that he considered the statements in disability and function reports describing very

14   limited activities of daily living.  Id.  Ultimately the ALJ found that plaintiff exaggerates the

15   limiting effect of her impairments.  Id.

16       After reviewing the medical evidence in the record, the ALJ stated that "there are no

17   medical records showing recurrent depressive symptoms that suggest [plaintiff] is unable to

18   perform basic work activities as alleged."  AT 19.  As discussed above, this statement is

19   substantially supported by records indicating that medication improved plaintiff's symptoms.  AT

20   460, 463-464, 466, 470, 478-479, 484, 486, 488.  Moreover, these and other records cited to by

21   the ALJ contain further evidence establishing plaintiff's lack of credibility.

22       As noted by Dr. Wong, plaintiff offered a convoluted history of her symptoms and

23   treatment records.  AT 415-416.  He also noted that she did not reveal and even denied a pattern

24   of substance abuse to him, but that she hesitated before answering no to his question regarding

25   having substance abuse issues and that she has a history of having attended DUI classes.  AT 416.

26   Dr. Wong also noted that plaintiff said she quit smoking, but there are records that plaintiff had

27   not done so.  AT 416, 460.  Dr. Mallare's medical evaluation/case analysis from September 3,

28   2009, indicates that plaintiff is only partially credible.  AT 435.  Furthermore, there are numerous

14

1   indications that plaintiff was not adhering to her medication treatments—although, they were

2   improving her symptoms, as previously discussed—and that she failed to seek mental health

3   treatment by missing her appointments without reason.  AT 459, 463-465, 467, 476; See Warre v.

4   Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006) (a condition controlled by medication

5   is not disabling); Bunnell, 947 F.2d at 345–47 (9th Cir. 1991) (the failure to comply with a

6   prescribed medication regimen is a valid reason for discrediting a plaintiff's claim that she suffers

7   from disabling psychiatric symptoms); Flaten, 44 F.3d at 1464 (the failure to seek treatment for a

8   medical problem may be a valid consideration).

9        These facts indicate that plaintiff may, to an extent, be malingering.  However, ALJ did

10   not make a specific finding of malingering.  Nonetheless, the reasons set forth by the ALJ in

11   rejecting plaintiff's testimony are clear, convincing, and supported by the record.  Accordingly,

12   the ALJ did not error in evaluating the credibility of plaintiff's subjective complaints.

13   D.  Lay Witness Testimony

14        Plaintiff also argues that the ALJ improperly failed to credit the third party statement

15   written by plaintiff's friend, Sheryl Straub, who has known plaintiff for over 25 years.  ECF No.

16   15-1, 28-30; AT 252-253.  "[L]ay witness testimony as to a claimant's symptoms or how an

17   impairment affects ability to work is competent evidence, and therefore cannot be disregarded

18   without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v.

19   Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe

20   a plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ

21   wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to

22   each witness."  Dodrill, 12 F.3d at 919; see also Stout v. Commissioner SSA, 454 F.3d 1050,

23   1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to

24   plaintiff, court cannot consider error to be harmless unless it can confidently conclude no

25   reasonable ALJ, when fully crediting testimony, could have reached different disability

26   determination).

27        Ms. Straub's statement, dated September 20, 2011, noted that plaintiff has difficulty

28   interacting with others and performing simple tasks.  AT 251-252.  She stated that plaintiff has

1    become more forgetful, has no stress tolerance, needs assistance at times to get up small stairs,

2    and often cannot get into a car.  AT 253.  She also stated that plaintiff falls more and seems

3    weaker over the last few years.  Id.

4         In rejecting this statement, the ALJ noted that it "provided the same statements that mirror

5    the allegations of the claimant" and thus "[t]here is no new or additional information to be

6    gleaned from [it]."  AT 17.  The ALJ's justification for rejecting the third party statement is

7    proper in the context of the opinion.  Ms. Straub's letter does not provide details or examples that

8    are independent of plaintiff's testimony.  Rather, the information she provides is cumulative and

9    duplicative of plaintiff's testimony—it does not further evidence the severity of plaintiff's

10   impairments.  Because the ALJ discussed the lay witness testimony and provided reasons

11   germane to the testimony in rejecting it, there was no error.

12   CONCLUSION

13        For the reasons stated herein, IT IS HEREBY ORDERED that:

14        1.  Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;

15        2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) is

16   GRANTED; and,

17        3.  Judgment is entered for the Commissioner.

18   Dated:  April 14, 2014

19   _____
     CAROLYN K. DELANEY
20   UNITED STATES MAGISTRATE JUDGE

21

22   33/4 dubois0827.ss

23

24

25

26

27

28